651 A.2d 195

**Steven BERK and Gerald Segal, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

**Steven BERK and Gerald Segal,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1994.

Decided Nov. 28, 1994.

Iris S. Pincus for appellants/appellees Steven Berk and Gerald Segal.

Lee C. Silverman, Asst. Counsel, for appellee/appellants Dept. of Transp.

Before SMITH and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

This is an appeal by the Commonwealth of Pennsylvania, Department of Transportation (Department) from orders of the Court of Common Pleas of Philadelphia County which overruled the Department's preliminary objections to a petition for the appointment of viewers and found, after an evidentiary hearing, that the Department had accomplished a de facto taking of property of the owners, Steven Berk and Gerald Segal.

Steven Berk and Gerald Segal (Owners) own a building on the north side of Walnut Street between Bonsall Street and 24th Street which contains twenty-one rental units, eighteen of which are apartments, one is a townhouse, one is a store front and one is a commercial space. The building is located along the east approach to the Walnut Street bridge, which was reconstructed by the Department over a period of time beginning in the spring of 1988 and ending in the fall of 1990.

In February of 1990, the Owners filed a petition for the appointment of a board of viewers alleging that the Department had accomplished a de facto taking of their property because the construction project had denied them access to the main entrance of their building on Walnut Street, thereby causing them to lose tenants and rent; had caused physical and structural damages to their building; and had caused a reduction of the property's value. The Owners, therefore, alleged that they had been substantially deprived of the beneficial use and enjoyment of their property.

The Department filed preliminary objections denying the allegations in the petition and asserting that the Department

had not taken or injured the property and had not deprived the Owners of the enjoyment and use of their property within the meaning of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101 to 1–901.

The Owners filed an answer to the Department's preliminary objections and, in March, 1991, the trial court overruled the Department's preliminary objections. The Department appealed. In June, 1992, this Court vacated the order and remanded the case to the trial court for findings of fact and conclusions of law with respect to whether a de facto taking had occurred. 148 Pa.Cmwlth. 336, 611 A.2d 349.

Evidentiary hearings were held on the Department's preliminary objections in July and August of 1993.

The trial judge found that the demolition of the bridge by large pounding equipment caused noise and dirt around the Owners' property and caused the property to vibrate, but there was no evidence of structural damage. He also found that, at various stages in the construction, there was either no access to the main entrance of the property or access was limited by means of a dirt path, which became muddy during inclement weather; another entrance to the property was on 24th Street; that on some occasions, during the project, tenants did not have access to the Walnut Street entrance due to the construction work, and that the tenants used the 24th Street entrance to enter and exit the property; that, as a result of the construction, cracks in the walls of the property worsened and windows, medicine cabinets and other walls were cracked; that, due to the construction project, the electric, gas and water to the property were temporarily shut off on certain occasions; that a commercial tenant, the Emory Delivery Service, who rented storefront premises on the property, did not have access to their store for delivery services during the construction period. Emory's premises was located directly on the bridge that was being reconstructed and, as a result of the bridge project, Emory broke their lease with the Owners and vacated the premises.

The trial judge, also found that, due to the project, some residential tenants broke their leases and moved out, some tenants did not renew their leases, and other tenants refused to pay their rent and were evicted.  The trial judge also found that the Owners made various concessions to remaining tenants such as forgiveness for late payments, repeated painting of the units and lowering the monthly rental payments.  That during the two and a half year bridge project, the Owners wanted to raise rents but were unable to do so because of the construction project.  The trial judge also found that the Owners expended money for extra cleanup that was needed due to the bridge project, and for extra repairs and purchases for tenants in order to prevent them from moving out because of the construction.

The trial judge, therefore, concluded that, as a direct result of the Department's activities, the Owners were deprived of the beneficial use and enjoyment of their property, that the Owners suffered lost profits, increased costs and business losses as a result of the construction project, that they suffered physical damage to their property and that, on occasions during construction, the Owners and their tenants were denied access to the property through the main entrance and the trial judge concluded that, as a result of the bridge project, there was a de facto taking of the Owners' property by the Department.

In this case, the issue is whether substantial evidence supports the trial court's decision that the Owners established a de facto taking of their property.[1]

A de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner

[1] Where the common pleas court dismisses preliminary objections to a petition for appointment of a board of view, our scope of review is limited to determining whether the trial court abused its discretion or committed legal error.  The trial court is the fact finder and its findings will not be disturbed if supported by substantial evidence.  *McGaffic v. Redevelopment Authority of the City of New Castle*, 120 Pa.Commonwealth Ct. 199, 548 A.2d 653 (1988), *petition for allowance of appeal denied*, 523 Pa. 645, 565 A.2d 1169 (1989).

of the use and enjoyment of his property. *Conroy–Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974).

■ There is no litmus formula to determine when government action will be deemed to. have the effect of such taking. It has remained for the courts to provide, with case by case development, the needed doctrinal elaboration. *1301 Filbert Limited Partnership Appeal,* 64 Pa.Commonwealth Ct. 605, 441 A.2d 1345 (1982). The United States Supreme Court has taken a similar case by case approach to the question of what constitutes a taking within the meaning of the Fifth Amendment to the United States Constitution. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

■ The trial judge concluded there was a de facto taking in this case because the Owners had suffered loss of profits, increased costs and business losses, had suffered physical damage to their property and the Owners and their tenants were denied access to the property through the main entrance. However, the owners/condemnees either admit or do not contest that their tenants always had access to the building, that the Owners were not threatened with the loss of their property, that the building did not suffer structural damage and that the market value of the property increased due to the bridge project.

The Owners and their tenants always had access to the building from the 24th Street entrance and access to the townhouse from Bonsall Street.

Even if the Owners had been temporarily deprived of all access during the construction period the Eminent Domain Code does not permit any award of damages for the temporary loss of access during construction. *Truck Terminal Realty Co. v. Department of Transportation,* 486 Pa. 16, 403 A.2d 986 (1979).

The Owners also claimed a substantial loss of rental income during the construction period, but a review of Exhibit C–3 (R. 383a–410a) does not support their contention. The total monthly income in April of 1987, after deduction for two

vacancies, was about $7500.00. From April, 1988 to December, 1990, the Owners submitted copies of twenty-eight monthly statements which total about $195,000.00, showing average monthly rentals of about $7,000.00 per month, ranging from a low of $5700.00 in April, 1990 to a high of $9,000.00 in May, 1988. The Owners, therefore, continued to receive more than 90% of their pre-construction rental income.

Their estimated annual expenses before the commencement of the construction project was about $85,000.00 or about $7,100.00 per month. (R. 382a.) The Owners introduced no quantitative evidence that such expenses had significantly increased during the reconstruction period.

The Owners also claimed they had to contribute about $150,000.00 to meet expenses of the property, but their "ledger sheet" (R. 453a–454a) shows that, during the relevant construction period from the spring of 1988 to the fall of 1990, their contributions were in the amount of $40,000.00, and that such contributions during the subsequent years of 1991 and 1992 exceeded the claimed contributions made during the construction period.

Furthermore, David Walls, a real estate broker, qualified by the Owners as an expert, who managed the properties for the Owners during the relevant period, testified that the market value of the property at the time he testified in August, 1993, was $100,000.00 more than the Owners' 1988 purchase price of $625,000.00, and that, in his opinion, immediately after the reconstruction period in November, 1990, the property had a market value of $900,000.00 to $950,000.00, especially because the bridge construction "looked pretty good". (R. 182a–183a.) No testimony was offered in contradiction of Mr. Walls' opinion as to the increase in market value.

The Owners, therefore, failed to introduce any expert evidence showing a reduction in the fair market value of the property as a result of the reconstruction of the Walnut Street bridge.

The Owners rely on *McCracken v. City of Philadelphia,* 69 Pa.Commonwealth Ct. 492, 451 A.2d 1046 (1982). McCracken,

who owned a bar and restaurant on his property, claimed a de facto taking due to construction activities by the City of Philadelphia and the Commonwealth. However, McCracken, showed that he lost his regular customers, the bar and restaurant's transient business from local commercial establishments dropped severely due to the detour of traffic around the property and the closing of area businesses following condemnations in the right-of-way of Interstate 95; the yearly gross receipts from the bar and restaurant dropped 40% from about $41,000.00 in 1972 to about $25,000.00 in 1976, and yearly profits dropped to less than one-third from about $12,000.00 in 1972 to about $4,000.00 in 1977. He could not meet costs for needed repairs and maintenance, and could not afford fire insurance. McCracken's property also suffered structural damage as a result of vibrations from the construction activities.

In this case, the property remained tenant occupied throughout the reconstruction period. The Owners did not rely on transient business for income, their gross income never dropped substantially during the bridge project nor was there any substantial evidence that their expenses had significantly increased. As a result of the reconstruction of the bridge, testimony showed that the fair market value of the property had increased instead of decreasing.

In *Darlington v. County of Chester,* 147 Pa.Commonwealth Ct. 177, 607 A.2d 315, *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 562 (1992), the petitioner owned six parcels of real estate, which included sixteen rental properties, including residential and office buildings. The petitioner claimed de facto taking damages due to his belief of an inevitable condemnation of his property by the County of Chester. He claimed that the county's actions resulted in the loss of rental income and unmarketability of his properties. The Commonwealth Court held that the petitioner did not show that there were exceptional circumstances which substantially deprived him of the beneficial use and enjoyment of his property. The court concluded that, where most of the petitioner's properties remained rented throughout the period

of time in question, the petitioner had not proven with substantial evidence that he suffered substantial deprivation of the use and enjoyment of his property and no de facto taking occurred. See also, *Department of Transportation v. Steppler*, 114 Pa.Commonwealth Ct. 300, 542 A.2d 175 (1988); *1301 Filbert Limited Partnership Appeal.*

At oral argument, counsel for the Owners claimed that, even if there was no showing of a decline in fair market value as a result of this project, the Owners were entitled to reimbursement for loss of rentals and additional expenses incurred.

In the case of *Township of Chester v. Department of Transportation*, 35 Pa.Commonwealth Ct. 466, 468, 386 A.2d 1062, 1063 (1978), *aff'd*, 495 Pa. 369, 433 A.2d 1353 (1981), the court said:

> 'For more than a century it has been consistently held by [the Pennsylvania Supreme] Court that in condemnation cases the measure of damages is based upon fair market value.' *Pennsylvania Gas & Water Co. v. Pennsylvania Turnpike Commission*, 428 Pa. 74, 82, 236 A.2d 112, 116 (1967). The fair-market-value measure of just compensation has now been incorporated into Section 602(a) of the Eminent Domain Code, 26 P.S. § 1–602(a), and is the only measure of compensation provided for by the Code.

Whether the condemnation is de jure or de facto, the measure of just compensation remains the same. "It was Appellant's burden to prove to the jury the value of the property immediately before and immediately after May 1, 1972, that being the date a de facto taking occurred." *Benkovitz Appeal*, 56 Pa.Commonwealth Ct. 523, 528, 425 A.2d 1178, 1181 (1981).[2]

In the eminent domain case of *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 378, 176 A. 13, 16 (1934), the court said:

2. Displaced persons are entitled to special damages for displacement, but the Owners here do not contend they are displaced persons. 26 P.S. § 1–601.

Appellant complains of the admission in evidence of the actual rent received for the property during construction. There is no error in the admission of this evidence as reflecting on the market value of the property, but it is not admissible as an independent item of damages.

After a careful review of the record we find that there was no substantial evidence to support the trial court's decision that the Owners of the subject property had been substantially deprived of the use and enjoyment of their property and, therefore, there is no de facto taking.

## ORDER

NOW, November 28, 1994, the orders of the trial court, in the above-captioned case, are reversed.