Joseph NEWMAN

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 11, 2002.
Decided Feb. 22, 2002.

Christopher J. Clement, Pittsburgh, for appellant.

Fred C. Jug, Jr., Pittsburgh, for appellee.

Before SMITH–RIBNER, Judge, SIMPSON, Judge and KELLEY, Senior Judge.

SMITH–RIBNER, Judge.

The ° Department of Transportation (DOT) appeals from the order of the Court of Common Pleas of Allegheny County, which dismissed its preliminary objections in response to Joseph Newman's petition under Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–502(e), for the appointment of a board of viewers.[1] The sole issue raised by DOT is

---

1. Section 502(e) provides as follows: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury."

whether the temporary interference with access due to construction that does not permanently and substantially deprive the owner of the beneficial use and enjoyment of property results in a de facto condemnation for consequential damages.

In 1997 DOT began construction of a new highway configuration at the south end of the Liberty Tunnels along West Liberty Avenue in Pittsburgh, Allegheny County, Pennsylvania. Newman owned and operated a used truck dealership at the corner of West Liberty Avenue and Hargrove Road, which was accessible from both roadways. A few months after DOT began the project, Newman closed his business because of problems associated with the construction. After the construction ended in February 2000, Newman sold the property pursuant to a 20–year lease-purchase agreement. Newman thereafter filed a petition for the appointment of a board of viewers in the trial court, asserting a claim for damages pursuant to Section 612 of the Eminent Domain Code, 26 P.S. § 1–612, for the interference with the use and enjoyment of his property during the construction.[2] DOT filed preliminary objections, asserting among other things that Newman failed to set forth a cause of action in eminent domain or for a de facto taking.[3] The trial court permitted a 90–day discovery period in which Newman and Gerard A. Esser, the Transportation Construction Manager, were deposed.

In his deposition, Newman testified and produced photographs showing construction vehicles and gravel piles blocking access from his property to West Liberty Avenue. Newman further testified that grading differences on both West Liberty Avenue and Hargrove Road made it impossible to enter and exit without damaging the tires or the undercarriage of a vehicle, even after DOT "cold-patched" the Hargrove Road exit twice. Moreover, Newman testified that he closed his business from November 1997 until February 2000 because the construction made it impossible for him to run a business. Even though he owned another car dealership close to the subject property, Newman testified that he was unable to move the truck business because his dealers' license issued by the Commonwealth was not valid at a different location. He testified that he displayed between 15 to 18 trucks on a lot adjacent to the project.

Esser testified that he served as the construction manager for the construction project. During his deposition, Esser admitted that Newman's business was shut down during the construction. Although he admitted that the construction interfered with both driveways during a substantial period of the project, Esser denied that either entry was inaccessible to vehicular traffic, except for a few days when DOT was paving West Liberty Avenue. Esser acknowledged that the construction resulted in a difference in elevation between the driveways and the roadways and that DOT did not place any signs on the driveways, Hargrove Road or West Liberty Avenue indicating that egress or ingress or any particular vehicular turning was prohibited.

The trial court based its decision on the pleadings, depositions, photographs and

---

**2.** Section 612 provides as follows: "All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken."

**3.** Section 504 of the Eminent Domain Code, 26 P.S. § 1–504, provides the authority for DOT to file preliminary objections in which DOT raises any objections that it may have to the petition for the appointment of viewers.

other evidence in the record. After reviewing the evidence, the trial court concluded that Newman had met his burden of alleging a de facto taking pursuant to *Elser v. Department of Transportation*, 651 A.2d 567 (Pa.Cmwlth.1994), and therefore it dismissed DOT's preliminary objections. The trial court also determined that Newman's business closed as a result of DOT's construction project. DOT contends that the trial court improperly dismissed the preliminary objections because the construction activities only temporarily interfered with access to Newman's property.[4] DOT maintains that the West Liberty Avenue driveway was always open during the two-year construction period, except for a short time when DOT was paving the roadway. Furthermore, when access to West Liberty Avenue was blocked, Newman still had access to Hargrove Road, which it "cold-patched" to mitigate the grading differences. DOT also contends that because Newman owned the property and could relocate his business to another site, he was never in jeopardy of losing the property or his business.

■ A de facto taking occurs when an entity that is clothed and vested with the power of eminent domain substantially deprives property owners of the use and enjoyment of their property. *Elser*. In such proceedings, property owners must establish that they were deprived of the use and enjoyment of their property and that this deprivation was a direct and necessary consequence of actions taken by the governmental entity. *Id.* There is no bright line test to determine when government action shall be deemed a de facto taking; instead each case before the courts must be examined and decided on its own facts. *Lehigh–Northampton Airport Authority v. WBF Associates, L.P.*, 728 A.2d 981 (Pa.Cmwlth.1999). In *McGaffic v. Redevelopment Authority of the City of New Castle*, 120 Pa.Cmwlth. 199, 548 A.2d 653 (1988), the Court noted the heavy burden that property owners must bear in these cases and stated that they must show the existence of exceptional circumstances to meet their burden of proof. *See also Lehigh–Northampton Airport Authority.*

The Court has defined the right of access to one's property as the right to reasonable ingress and egress to the property. *See Elser.* The Court held in *Elser* that a de facto condemnation occurred when DOT dumped stones in the landowner's driveway, thus depriving him of reasonable access to his property. Similarly in *Department of Transportation v. Richards*, 124 Pa.Cmwlth. 432, 556 A.2d 510 (1989), the landowner was unable to access his property without scraping the bottom of his vehicle due to grading differences caused by DOT's construction. Even though DOT's activities did not preclude complete access, the *Richards* Court held that the roadwork constituted a substantial and permanent impairment recoverable under the Eminent Domain Code. In addition, the Court in *Friedman v. City of Philadelphia*, 94 Pa.Cmwlth. 572, 503 A.2d 1110 (1986), examined the difference between a construction project adversely impacting an individual's business and one that forces the closure of a business. It held that construction activities that forced owners out of business constituted permanent interference establishing a de facto condemnation, even though the pedestrian and vehicular access was restored after the construction was completed. The Court pointed out that although the city contended that the project was temporary, it was

---

4. This Court's review of the trial court's dismissal of DOT's preliminary objections is limited to determining whether the court's findings are supported by competent evidence in the record, whether the court abused its discretion or whether it committed an error of law. *Elser.*

of no consequence to the landowner because the landowner's business no longer existed.

DOT contends that the *Elser* and *Friedman* cases do not control the outcome of this case and that Newman has not established that he suffered any consequential damages due to the construction project. DOT directs this Court's attention to *Truck Terminal Realty Co. v. Department of Transportation,* 486 Pa. 16, 403 A.2d 986 (1979), *Waldron Street Book Co. v. City of Pittsburgh,* 771 A.2d 111 (Pa. Cmwlth.2001), and *Berk v. Department of Transportation,* 168 Pa.Cmwlth. 560, 651 A.2d 195 (1994). In *Truck Terminal* the Pennsylvania Supreme Court held that the Eminent Domain Code does not provide damages for the temporary loss of access during construction in a situation where patrons had to travel an additional 14 miles to reach the owner's business. The *Waldron* Court held that there was no de facto taking where access to the business was available during daylight business hours and there was only a five percent loss in sales during the construction. Similarly in *Berk* the Court held that there was no de facto taking where the occupants were deprived of access to the main entrance of their building, there was no structural damage to the property and its value increased after construction. Unlike here, the *Berk* occupants never alleged a denial of access.

■ Although DOT asserts that the cases it cited control the outcome of this case, each case is distinguishable from the situation presented here. The owners in each case had reasonable access to their property during the construction projects, and none of the owners were forced to close their businesses due to the construction. The issue here, however, is whether Newman established a substantial deprivation of the use and enjoyment of his property. During DOT's 27–month construction, there was no reasonable ingress and egress from Newman's property, which resulted in the closure of Newman's business. The trial court's finding that Newman closed his business due to the construction project is supported by substantial evidence in the record. Because the trial court committed no error of law in overruling DOT's preliminary objections, the court's order is affirmed.

### ORDER

AND NOW, this 22nd day of February, 2002, the order of the Court of Common Pleas of Allegheny County dismissing the Department of Transportation's preliminary objections to Joseph Newman's petition for the appointment for a board of viewers is hereby affirmed.