**Richard SIENKIEWICZ, Jr., t/d/b/a Montage Mini–Mart, Inc.**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION, Appellant.**

**Richard Sienkiewicz, Jr. t/d/b/a Montage Mini–Mart, Inc., Appellant,**

v.

**Commonwealth of Pennsylvania, Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2003.

Decided Jan. 22, 2004.

Reargument En Banc Denied March 19, 2004.

Edwin A. Abrahamsen, Scranton, for appellant.

John V. Rovinsky, Scranton, for appellee.

BEFORE: COLINS, President Judge, and LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Richard Sienkiewicz, Jr., t/d/b/a Montage Mini–Mart, Inc. (Landowner), and the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), appeal from an order of the Court of Common Pleas of Lackawanna County (trial court), dated May 2, 2003, as clarified by the trial court's order dated June 9, 2003, which denied PennDOT's preliminary objections to Landowner's amended petition for appointment of a Board of Viewers and which determined that PennDOT's actions in connection with a road reconfiguration constituted a *de facto* condemnation of Landowner's property. We affirm.

On May 23, 2002, Landowner filed an amended petition for appointment of a Board of Viewers pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as*

*amended,* 26 P.S. § 1–502(e). In the amended petition, Landowner alleged that he is the record owner of property located at 2801 Stafford Avenue, Moosic, Pennsylvania (the subject property).[1] The subject property is located in close proximity to the intersection of Stafford Avenue and Davis Street within the City of Scranton, County of Lackawanna, Pennsylvania, and the Borough of Moosic, County of Lackawanna, Pennsylvania. At some point prior to the initiation of the instant matter, PennDOT approved plans for the redesign and construction of the Davis Street interchange.[2] The Davis Street interchange intersects with Interstate 81 in close proximity to the subject property.

In the amended petition, Landowner alleged that the redesign and construction of the Davis Street interchange will limit, restrict and/or prohibit access to the subject property. Landowner alleged that PennDOT's actions constitute a compensable taking of Landowner's property and that PennDOT affected a *de facto* condemnation of Landowner's property for which he has not been compensated. Landowner noted that PennDOT had not filed a declaration of taking or a petition for appointment of a Board of Viewers for the compensable injury suffered by Landowner.[3] Landowner requested the appointment of a Board of Viewers to determine the

amount of compensatory and consequential damages to which he alleged he was entitled pursuant to Sections 502 and 612 of the Eminent Domain Code, 26 P.S. § 1–502 and § 1–612.

On June 5, 2002, PennDOT filed preliminary objections to the amended petition for appointment of a Board of Viewers, alleging that Landowner failed to state a cause of action and did not satisfy the legal burden for alleging a *de facto* taking. In its preliminary objections, PennDOT denied that Stafford Avenue is a legally opened street in the City of Scranton and the Borough of Moosic. Rather, it asserted that prior to any potential action by PennDOT, Stafford Avenue ended at the border of Lackawanna Avenue and that the roadway that the subject property abutted was privately owned by an individual named Anthony Rinaldi (Rinaldi). PennDOT either condemned or amicably acquired neighboring properties, including the part of the Rinaldi tract that had comprised the roadway.

In lieu of taking testimony at a hearing, the trial court instructed the parties to conduct the depositions of representatives of the parties as well as any other appropriate witnesses. The parties conducted depositions of several engineers, PennDOT representatives and other witnesses and submitted the depositions into evidence

---

1. Landowner operated a convenience store and gas/diesel station on the subject property.

2. PennDOT decided to reconfigure the Davis Street Exit Ramp from Interstate 81 from a "diamond" design to a higher capacity "loop" ramp to alleviate traffic congestion and accommodate the increasing number of motorists. As a result of the reconfiguration, the intersection was moved 230 feet northwest to create three separate intersections. Due to this change, Landowner's business property is no longer located at the intersection of Davis Street and the previously existing Stafford Avenue. Southbound traffic exiting Interstate 81 from Davis Street must now proceed past

Landowner's property 350 feet to a new intersection and then circle 900 feet around a competitor's gas station/convenience store in order to access Landowner's property. Landowner claims he was forced to close his business due to the reconfiguration.

3. Landowner also alleged that PennDOT's actions resulted in a change of grade of the road or highway which abuts the subject property and that PennDOT's actions will cause a permanent interference with access to the subject property. The alleged change of grade is not an issue before this Court.

along with accompanying exhibits of record.

By memorandum opinion and order dated May 2, 2003, the trial court stated that "competent and credible evidence establishes that PennDOT has effectively denied a reasonable and safe means of access to [Landowner's] property for tractor trailers, buses and large trucks which formerly comprised a considerable portion of [Landowner's] business." (R.R. at 483a).

The trial court then issued findings of fact. As part of its findings of fact, the trial court found that the subject property is situated adjacent to land owned by Andrew G. Zubert (Zubert) upon which a competing gas station and mini-mart is located. (R.R. at 485a). The Landowner and Zubert properties are bisected by a strip of realty that is allegedly owned by Rinaldi and which has functioned as an extension of Stafford Avenue to Davis Street. *Id.* The bisecting strip of roadway, which will be referred to as old Stafford Avenue, provided a means by which Davis Street traffic could enter Stafford Avenue and vice-versa and, in the process, access the Landowner and Zubert properties. *Id.*

The trial court found that prior to the construction to reconfigure the Davis Street exit, the Landowner had open access along the Stafford Avenue side of his property and motorists exiting Interstate 81 via the Davis Street exit would access the Landowner's business by making a right hand turn onto Davis Street, proceeding northwest on Davis Street for approximately 120 feet, turning right onto old Stafford Avenue which bisected the Landowner and Zubert properties. (R.R. at 487–488a). In order to accomplish the planned reconfiguration, PennDOT relocated the intersection of Davis Street and Stafford Avenue in the vicinity of Landowner's property by moving that intersection 230 feet northwest so as to create three separate intersections situated more than 1,000 feet apart that are controlled by traffic lights. (R.R. at 488a). The trial court found that under the new configuration, Landowner's property is no longer situated at the intersection of Davis Street and old Stafford Avenue. (R.R. at 489a). Under the new configuration, southbound traffic exiting Route 81 via the Davis Street exit can no longer access Landowner's property directly by way of old Stafford Avenue. *Id.* Rather, such traffic must drive past Landowner's property and proceed 350 feet northwest to the new intersection of Davis Street and Stafford Avenue, turn right onto Stafford Avenue, drive past Zubert's gas station and mini-mart property and travel a circuitous route of 900 feet to arrive at Landowner's property. *Id.*

With regard to the access by way of old Stafford Avenue, the trial court found that PennDOT narrowed old Stafford Avenue's width from 45 feet to 24 feet. *Id.* Importantly, the trial court found that the physical dimensions of old Stafford Avenue are no longer adequate to accommodate large trucks, tractor-trailers, motor homes, tour buses and large postal trucks which formerly patronized Landowner's business. *Id.*

The trial court also found that with regard to the easterly means of access to Landowner's property from the original Stafford Avenue (i.e., that portion of the public roadway that does not include old Stafford Avenue), PennDOT has changed Landowner's ingress and egress from "wide open" uncurbed access comprised of 91 foot and 62 foot wide throats along Stafford Avenue to two 40 foot wide drop curb openings carved out of 8 inch high curbing along Stafford Avenue. (R.R. at 490a). According to the American Association of State Highway and Transportation

Officials standards, the 40 foot wide drop curb openings are not a reasonably safe means of access for some tractor trailers, buses, motor homes and trucks. *Id.*

As to lost business, the trial court found that Landowner experienced a dramatic reduction in gasoline and convenience items sales since the Davis Street exit ramps and the Stafford Avenue access-ways were reconstructed in December 2002. (R.R. at 490–491a).

Landowner's decrease in sales and revenue was largely attributable to the fact that tractor trailers, motor homes, buses and large trucks can no longer access his property by way of Stafford Avenue. *Id.* As a result of the continuing decline in sales, Landowner was forced to cease business operations completely on March 4, 2003. (R.R. at 491a).

Based upon the findings of fact, the trial court concluded that old Stafford Avenue was a public road which had been established by prescription. That issue has not been appealed by the parties. The trial court also concluded that the detour did not constitute an unreasonable permanent interference with access since it was less than 1,000 feet. Moreover, the trial court determined that the somewhat circuitous route did not constitute a *de facto* taking because a landowner does not have a property right in traffic flow. However, the trial court concluded that PennDOT's narrowing of the access to the subject property effectively denied tractor trailers, buses and large trucks a reasonable and safe means of ingress to and egress from the subject property, which resulted in a significant decline in gasoline and convenience items sales and forced Landowner to

close his business. For that reason, the trial court held that PennDOT's actions constituted a *de facto* taking under Section 612 of the Eminent Domain Code. Accordingly, it denied PennDOT's preliminary objections and directed that a Board of Viewers be appointed to determine the amount of just compensation due under Section 612 of the Eminent Domain Code.

Subsequent to the issuance of the order dated May 2, 2003, PennDOT filed a motion for clarification of the trial court's order. In response, the trial court issued an ordered dated June 9, 2003, wherein it amended its previous order to reflect that there had been a *de facto* condemnation as opposed to a *de facto* taking. Other than that change, the previous order remained in effect.

On appeal[4] to this Court, Landowner raises the following issues: (1) whether the trial court erred in failing to find that PennDOT committed a *de facto* taking after Landowner was forced to close his business due to PennDOT's re-routing of traffic and limited access as a result of the construction project; and (2) whether the trial court erred in ruling that PennDOT's re-routing of traffic could not result in a permanent interference of access to Landowner's business such that a *de facto* taking occurred.

PennDOT raises the following issues on appeal related to access: (1) whether the trial court erred by concluding that an action exists for interference with direct ingress and egress to and from a public highway where access has not actually been impeded by the placement of curbing or other barriers; (2) whether the trial court erred in determining that Penn-

---

4. The scope of review of a trial court's dismissal of preliminary objections to a petition for the appointment of a board of viewers is limited to determining whether the trial court findings are supported by substantial evidence in the record, whether the trial court abused its discretion or whether it committed an error of law. *Snap–Tite, Inc. v. Millcreek Township,* 811 A.2d 1101 (Pa.Cmwlth.2002).

DOT's narrowing of the access way effectively denied reasonable ingress and egress by large vehicles causing Landowner a decline in business; and, (3) whether Landowner's property will retain reasonable ingress and egress if PennDOT places curbing as initially planned.

Landowner has the burden of establishing a *de facto* taking. *Miller & Son Paving, Inc. v. Plumstead Township*, 552 Pa. 652, 717 A.2d 483 (1998), *cert. denied*, 525 U.S. 1121, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999). There is no "bright line" test for determining a *de facto* taking. Each case turns on its own unique facts.

Every property owner has a right of access to his or her property from a public roadway and that right of access has been defined as reasonable ingress and egress to the property and abutting highway. *Commonwealth of Pennsylvania v. Hession*, 430 Pa. 273, 242 A.2d 432 (1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 693 (1969); *Newman v. Department of Transportation*, 791 A.2d 1287 (Pa.Cmwlth.2002). The right of access to and from a public roadway is considered a constitutionally protected right which cannot be deprived by the government without just compensation. *Wolf v. Department of Highways*, 422 Pa. 34, 220 A.2d 868 (1966). In that regard, Section 612 of the Eminent Domain Code states that "[a]ll condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from ... permanent interference with access thereto, ... whether or not any property is taken." Section 612 of the Eminent Domain Code.

Although the "right of access does not entitle the abutting owner to access at all points along the highway," a condemning authority is liable for damages if it "permanently interferes with an own-er's access to the property by reasonable and conventional means." *Jackson Gear Co. v. Department of Transportation*, 657 A.2d 1370, 1371 (Pa.Cmwlth.1995). "Reasonable access to one's property is a question of fact to be determined by the trial court." *Elser v. Department of Transportation*, 651 A.2d 567, 570 (Pa.Cmwlth. 1994), *petition for allowance of appeal denied*, 540 Pa. 650, 659 A.2d 988 (1995). If alternative access to the property exists, it must enable the property to be used for the purpose for which it previously had been employed in order to be considered a reasonable means of entry. *See Commonwealth of Pennsylvania v. Appointment of Viewers to Assess Damages to Property of McCrady*, 399 Pa. 586, 160 A.2d 715 (1960).

First we will address Appellant's arguments as they relate to the new reconfiguration of the roadway. This Court has recognized that "a detour might be so long and circuitous as to represent an unreasonable permanent interference with access." *Jackson Gear Company*, 657 A.2d at 1371. The Supreme Court has cautioned, however, that "[o]ur cases are legion that, whether the result of a condemnor's action is to compel the allegedly affected property owner to travel a short distance farther to reach the system of streets going in a specific direction, this slight inconvenience is not compensable." *Hession*, 430 Pa. at 278, 242 A.2d at 434. Subsequent decisional precedent has established that circuitous detours of more than several miles may constitute a compensable deprivation of reasonable access whereas less onerous routes generally have been regarded as non-compensable inconveniences. *See Jackson Gear Company* (detour of between six and eleven and one-half miles required by erection of medial barriers represented unreasonable interference with right of access); *Department of Transportation v. Guyette*, 103

Pa.Cmwlth. 402, 520 A.2d 548 (Pa.Cmwlth. 1987), *petition for allowance of appeal denied,* 516 Pa. 644, 533 A.2d 714 (1987) (requiring eighteen-wheel trucks to travel more than an additional seven miles in order to enter a commercial property was held to be compensable under the Eminent Domain Code); and *Appeal of Department of Transportation,* 164 Pa.Cmwlth. 81, 644 A.2d 1274 (1994), *petition for allowance of appeal denied,* 540 Pa. 605, 655 A.2d 993 (1995) (one and three-tenth mile detour required by barrier was not so circuitous as to be a substantial or unreasonable interference with access); and *In re Condemnation of 1315 to 1391 Washington Boulevard, City of Pittsburgh, Allegheny County, v. Department of Transportation,* 34 Pa.Cmwlth. 356, 383 A.2d 1289 (1978) (circuitous travel covering two and eight-tenths miles found not be so unreasonable as to constitute a taking under Section 612 of the Eminent Domain Code).

We agree with the trial court's analysis that the degree of circuity at issue in the litigation is far less burdensome than those detours of one and three-tenth and two and eight-tenth miles that have been declared reasonable by the courts. The total distance that a traveler must now travel from the Davis Street exit in order to get to Landowner's property is less than 1,000 feet. Hence, we conclude that the route at issue in this case does not constitute an unreasonable interference with access.

■ Also as to the reconfiguration, the Supreme Court has long recognized "that owners of properties abutting state roads have no cognizable legal interest in preserving a particular flow of traffic on those roads." *Carlino v. Whitpain Investors,* 499 Pa. 498, 453 A.2d 1385 (1982). Indeed, in its seminal holding in *Wolf,* the Supreme Court squarely addressed the argument

currently being advanced by Landowner and wrote as follows:

> Nor does the right of ingress or egress to or from one's property include any right in and to the existing public traffic on the highway, or any right to have such traffic pass by one's abutting property. The reason is that all traffic on public highways is controlled by the police power of the State, and what the police power may give an abutting property owner in the way of traffic on the highway it may take away, and by any such diversion of traffic the State and any of its agencies are not liable for any decrease of property values by reason of such diversion of traffic, because such damages are 'damnum absque injuria', or damage without legal injury.

*Wolf,* 422 Pa. at 47, 220 A.2d at 875. Although *Wolf* was decided prior to the enactment of the Eminent Domain Code in 1964, the legal principles articulated therein remain controlling.[5]

Again we agree with the trial court. Because a landowner does not have a property right in the flow of traffic, the diversion of traffic that resulted due to PennDOT's reconfiguration of the Davis Street Interchange does not constitute a compensable *de facto* taking. Hence, Landowner cannot prevail in arguing that he is entitled to recover under Section 612 of the Eminent Domain Code for the loss of business that he may have suffered as a result of the re-routing of traffic.

■ Having addressed Landowner's arguments as they relate to the circuitous route, we now turn to Landowner's and PennDOT's arguments as they relate to ingress to and egress from the subject property. Pennsylvania courts have previously found circumstances where the interference with the right of ingress and

---

**5.** *See Appeal Department of Transportation,* 644 A.2d at 1276, n. 7.

egress to and from a property was unreasonable such that the landowner was entitled to compensation under Section 612 of the Eminent Domain Code. *See In re Condemnation of 0.077 Acres in the Borough of West Fairview, Cumberland County,* 23 Pa.Cmwlth.628, 354 A.2d 14 (1976); and *Tracy v. Department of Transportation,* 43 Pa.Cmwlth. 218, 402 A.2d 286 (1979).

In *Finkelstein,* the owner of a triangular shaped tract petitioned for appointment of viewers on the basis of an allegation that PennDOT unreasonably interfered with access to his tract by constructing a curb where it was formerly possible to enter the tract to patronize the landowner's tenant's dry cleaning establishment. PennDOT filed preliminary objections to the petition for appointment. The property in question was bounded on two sides by two roads which intersected at the apex, or the eastern end, of the tract. The third side was bounded by private property. The tract contained a two-story dwelling and a trailer from which a tenant operated a pick-up and drop-off station for dry cleaning. Patrons of the cleaning business customarily entered the lot at the apex and parked in front of the trailer. However, in 1973 PennDOT extended curbing, which already existed along the entire northern side of the lot along one of the roads, around the apex and part way along the southern perimeter bounded by the other road. A depression in the curb along the southern boundary and a driveway at the western boundary were the only remaining points of access to the property. Shortly thereafter, the tenants terminated their business.

The trial court determined that despite the Commonwealth's failure to actually "take" any of the landowner's property, the landowner had alleged damages that were compensable under Section 612 of the Eminent Domain Code in that access to his tract, which abutted an area of highway improvement, was permanently interfered with. The trial court found that the dwelling and trailer were situated on the parcel in such a manner as to extend "virtually from one side of the lot to the other" and that the curb depression and driveway "remained at points behind the trailer." *Finkelstein,* 354 A.2d at 16. In addition, the trial court found that "the parking area from the trailer to the intersection was effectively sealed off by the curbing," and that as a result "the commercial use of the land has been discontinued, the trailer and house have been removed from the lot, and plans to build a permanent commercial building, using part of the lot for parking, have been abandoned." *Finkelstein,* 354 A.2d at 16.

This Court, in affirming the trial court, compared the facts in *Finkelstein* to similar facts that were previously before the Supreme Court in *McCrady.* In *McCrady,* the owner of a triangular lot on which commercial operations were conducted was permitted damages against the Commonwealth for interference with access related to the installation of curbing along the property's highway frontage. Applying *McCrady* to the facts before us in *Finkelstein,* this Court wrote:

> A comparison of this case with the McCrady Case, supra, leaves no question that the injuries sustained here may be found compensable by a board of view. McCrady owned land on which a gasoline station, restaurant, and parking lot were situated. During improvements to the abutting intersection, the Commonwealth erected curbs around this property, leaving five 'access ways' which made ingress and egress to and from the lot 'exceedingly difficult and, in some instances, impossible.' The effect of these improvements was a 'practical denial of any access to the property for

the purpose for which it was employed.' The case before us is even stronger. Here, the Commonwealth has completely sealed off that portion of the lot which is put to commercial use. In each case, the landowner has 'been faced with alternatives of either ceasing any commercial operations on the premises or of relocating the building in which such operations took place to fit in with the new construction, particularly the location of the new access ways and curbing.' This is an injury which is properly to be considered by a board of view. *Finkelstein*, 354 A.2d at 16 (citations omitted).[6]

This Court further concluded that "the installation of curbing in the instant case, which is alleged to have permanently interfered with access to [the landowner's] abutting property, is an act of 'condemnation' under the [Eminent Domain] Code, the damages flowing from which are compensable under Section 612." *Finkelstein*, 354 A.2d at 17.

In *Tracy*, this Court was also presented with a situation where a landowner filed a petition for appointment of a board of viewers due to the installation of curbing, to which PennDOT filed preliminary objections. In that case, the landowner owned a parcel of land situated at the southeast corner of the junction of two roads. In 1976, PennDOT, which was widening one of the roads in order to set up a "standby" left turn lane, erected an eight-inch curb around the edge of the landowner's property within the highway right-of-way. The curbing hemmed the circumference of the corner breaking into openings or access "throats" on both roads. One of the openings was one hundred feet; the other was forty-four feet. Before the installation of

the curbing, the landowner's property and the roads were blended or graded together. The property had a tavern and a six-unit motel situated on it.

Prior to the road widening, a good percentage of the landowner's patrons were truck drivers. However, after the installation of the curbing, tractor trailer trucks could no longer exit the lot safely once they come in from the one road. Moreover, they could not enter from the other road at all.

This Court, in affirming the trial court's dismissal of the preliminary objections, explained as follows:

> The law is clear that in these cases the burden is heavy for the constructive condemnee to prove direct damages, but we cannot say the lower court abused its discretion in finding [landowner] met his burden. Before the curbing, a truck coming north on [Route] 119 could pull in front of the [landowner's] tavern and back around to the right, parking parallel to the motel. When leaving the trucker could just pull out and continue heading north. Now a truck turning right into [landowner's] property from the right hand lane can do so only by making an illegal right turn across one lane of traffic out of the passing lane. But once in, the trucker's problems are not over. To get out he must back out into the highway.

*Tracy*, 402 A.2d at 287.

Based upon the above, the Court concluded that the landowner had been denied access to his property and that the trial court correctly dismissed the preliminary objections.

---

6. The Court recognized that *McCrady* was a pre-Eminent Domain Code case but concluded that the analysis used in *McCrady* was appropriate for the case then before it. *Finkelstein*, 354 A.2d at 16, n. 3.

The cases of *McCrady, Finkelstein* and *Tracy* support the trial court's determination in this case that PennDOT's activities related to changes the ingress in egress of the property constituted a *de facto* condemnation. Again, in the case at hand, the trial court specifically found that PennDOT narrowed old Stafford Avenue's width from 45 feet to 24 feet and that the physical dimensions of old Stafford Avenue are no longer adequate to accommodate large trucks, tractor-trailers, motor homes, tour buses and large postal trucks which formerly patronized Landowner's business. (R.R. at 489a). In addition, the trial court found that with regard to the easterly means of access to Landowner's property from the original Stafford Avenue (i.e., that portion of the public roadway that does not include old Stafford Avenue), PennDOT has changed Landowner's ingress and egress from "wide open" uncurbed access comprised of 91 foot and 62 foot wide throats along Stafford Avenue to two 40 foot wide drop curb openings carved out of 8 inch high curbing along Stafford Avenue. (R.R. at 490a). According to the American Association of State Highway and Transportation Officials standards, the 40 foot wide drop curb openings are not a reasonably safe means of access for some tractor trailers, buses, motor homes and trucks. *Id.* As to lost business, the trial court found that Landowner experienced a dramatic reduction in gasoline and convenience item sales since the Davis Street exit ramps *and* the Stafford Avenue accessways were reconstructed in December, 2002. (R.R. at 490–491a). It also found that Landowner's decrease in sales and revenue were largely attributable to the fact that tractor trailers, motor homes, buses and large trucks could no longer access his property by way of Stafford Avenue. *Id.* As a result of the continuing decline in sales, Landowner was forced to cease business operations completely on March 4, 2003. (R.R. at 491a).

Hence, although Landowner is not entitled to compensation for PennDOT's rerouting of traffic, it is entitled to compensation for the PennDOT's permanent interference in the use and enjoyment of the subject property because the narrowing of old Stafford Avenue and the installation of the eight-inch curbing prevents large trucks and similar vehicles from having reasonable and safe access to the subject property. Therefore, the trial court correctly determined that PennDOT's activities as they relate to access to the property constitute a *de facto* condemnation.[7]

7. PennDOT argues that the trial court erred when it concluded that an action exists for interference with direct ingress and egress because at this time it has not actually installed the eight-inch curbing, therefore, access has not yet been impeded by the placement of curbing or other barriers. While such an argument may be valid under different circumstances, we note that in the case at hand, PennDOT appears to be arguing that Landowner's business failed because of the rerouting of traffic, to which Landowner has no recourse. Normally, damages would arise after an impediment is in place. This allows for a more accurate and less speculative measure of damages related to the impediment. Since the business failed prior to the installation of the curbing, PennDOT seems to take the position that the installation of the curbing cannot serve the basis of damages, particularly because it has not yet been installed. However, simply because PennDOT's noncompensable actions contributed to the demise of Landowner's business prior to the completion of the planned installation of curbs, this does not somehow insulate PennDOT from its responsibility to compensate for its interference with access to the subject property once the installation is completed. We note that PennDOT has not taken the position that it is not going to install the curbing. Rather, the curbing simply has not been installed yet and Landowner's business has already ceased operations. Under these circumstances, the denial of preliminary objections and the appointment of a board of viewers is appropriate.

Accordingly, for the reasons set forth above, the order of the trial court is affirmed.

## ORDER

AND NOW, this 22nd day of January, 2004, the order of the Court of Common Pleas of Lackawanna County (trial court), dated May 2, 2003, as clarified by the trial court's order dated June 9, 2003, is hereby affirmed.