In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 115, Section 11A, in Center Township, Beaver County, Pennsylvania. Louis J. Elias and Catherine A. Elias, His Wife; George Elias, Jr. and Cynthia Elias, His Wife *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued May 5, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate.

*Benjamin B. Wechsler,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*Joseph M. Stanichak,* for appellees.

OPINION BY PRESIDENT JUDGE BOWMAN, July 29, 1976:

Appellees are owners of a parcel of real estate in Center Township, Beaver County on which an apartment house is located. The property in question abuts the intersection of Legislative Routes 115-11A and 76-22A.

On August 30, 1968, the Governor approved a plan entitled "Drawings Establishing Limited Access High-

way & Authorizing Condemnation of Right of Way of Legislative Route 115-76 Section 11A R/W, 22A R/W in Beaver County'' (first plan) which was filed in the recorder of deeds office.

Subsequently, on July 25, 1973, the Governor approved a successor plan (second plan) which also was filed in the county recorder of deeds office. No declaration of taking has been filed as to either of said plans. On January 9, 1975, a third plan was recorded which basically incorporated the design of the two prior plans. As the record does not include copies of these plans, we cannot ascertain with certainty whether the third plan does or does not include a physical taking of some frontage along appellees' property. This third plan is not before us in these consolidated appeals involving only the first and second plans. Similar doubt as to the first and second plans appears to be resolved by the pleadings which disclose that the completion of either of the first two plans would not encompass a physical taking of frontage of appellees' property, but would result in loss of unlimited access to the highway from appellees' property because of the limited access highway features of the plans.

On August 29, 1974, appellees filed a petition for the appointment of viewers pursuant to Section 502(e) of the Eminent Domain Code (Code), Act of June 22, 1964, Spec. Sess., P.L. 84, *as amended*, 26 P.S. §1-502 (e), asserting a compensable injury and a lack of a declaration of taking. Similarly, on April 28, 1975, appellees filed another petition pursuant to this section with respect to the second plan. To both petitions, the Pennsylvania Department of Transportation (PennDOT) filed preliminary objections contending that no compensable injury had occurred.

The court below treated both petitions in one opinion overruling PennDOT's preliminary objections and

appointing viewers to determine damages. It is from this order that PennDOT appeals to this Court.[1]

As each de facto taking rests upon its own unique factual posture, *see Rawls v. Central Bucks Joint School Building Authority*, 8 Pa. Commonwealth Ct. 491, 303 A.2d 863 (1973), it is necessary to examine the record in this case which, by stipulation, consists of depositions including a deposition of one of the appellees, exhibits consisting of exchanges of correspondence between PennDOT representatives and appellees, and records of other proceedings in the court below pertaining to the highway project in question.

The court below concluded as a matter of law that this evidence resulted in injury to appellees' property of such a nature as to substantially deprive them of their beneficial use and enjoyment thereof.

We disagree as we are of the opinion that some of the evidence upon which the court below relied is not relevant to the issue and the remaining evidence is insufficient to support an asserted de facto taking. The only possible substantial interference with appellees' use and enjoyment of their property under the facts here present, if any, must be found in the declared designation of the highway along the frontage of their property as one of limited access. The present use of the property as an apartment house remains undisturbed as does access to the property for that use. The record is void of any substantial evidence that such present use and enjoyment of the property is or will be interfered with by the declared, but not yet executed, limited access designation. In essence, appellees' case must rest upon a theory that a declared designation of limited access constitutes substantial interference with their present use and enjoyment of

---

[1] Appellees also filed in the court below a rule to show cause why the third plan should not be stricken; this petition was dismissed and is not before us here.

the property in that it affects their ability to sell the property for a different use—one for which unlimited access enhances the value of the property over its present value for its present use.

Further, even if one assumes the validity of such a theory, there is no evidence in the record that a commercial or similar use is the highest and best use of the property in terms of its value. The court below relied heavily upon a deposition and the testimony of one of the appellees concerning negotiations with a prospective purchaser for use of the property as an automobile agency and other unidentified business use negotiations. All of these were terminated when the possible purchasers learned of the limited access designation of the highway. That any such sale would have produced a purchase price greater than the value of the property in its present use or yet another use is left unsaid.

The court below also relied upon other eminent domain proceedings in the Court of Common Pleas of Beaver County relative to the highway plans in question as part of a "course of conduct" by PennDOT as substantially depriving appellees of the beneficial use and enjoyment of their land. In 1969 and in 1972, four other property owners in the vicinity of appellees' property had filed petitions pursuant to Section 502(e) of the Code, three of which resulted in awards of damages to the petitioners. The trial court characterized these as successful proceedings. In fact, they were unopposed by PennDOT. Three of these proceedings included allegations of an aborted sale or lease of the subject land for commercial purposes by reason of the limited access highway designation of the plans. The fourth was withdrawn. The relevance and probative value of such evidence to the inquiry at hand is questionable, particularly in light of the fact that PennDOT did not, as here, object to the pro-

ceedings as well as the fact, not present here, that in the three cases, which proceeded to an award of damages, a firm contract of sale or lease for commercial use, the highest and best use, was acknowledged. Upon inquiry into whether PennDOT's action substantially deprived appellees of the use and enjoyment of their property, not that of other property owners under different facts, we believe such evidence to be irrelevant to the inquiry.

The court below also relied upon the plans themselves as evidence tending to support a substantial deprivation of use and enjoyment of their property by PennDOT because of the limited access designation on the plans. The law is clear that the mere filing of a plan, in itself, is not a de facto taking. *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 321 A.2d 598 (1974); *Commonwealth Appeal*, 422 Pa. 72, 221 A.2d 289 (1966). In addition, we have already said that communications from agents of the Commonwealth concerning the effects of a pending or proposed condemnation do not give condemnees a greater entitlement to allege a taking. *County of Allegheny v. The Church of Jesus Christ*, 14 Pa. Commonwealth Ct. 510, 322 A.2d 803 (1974); *see also Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971). Nor does the fact that neighboring properties have been acquired by the condemnor enhance appellees' position. *Department of Transportation v. Securda & Company, Inc.*, 16 Pa. Commonwealth Ct. 40, 329 A.2d 296 (1974). However, "it has been . . . held that planning the other activities undertaken preliminarily to a proposed exercise of the power of eminent domain may or may not constitute a *de facto* 'taking' depending upon the degree and quality of the damages imposed." *Commonwealth's Crosstown Expressway Appeal*, 3 Pa. Commonwealth Ct. 1, 6, 281 A.2d 909, 911 (1971). (Emphasis in original.)

In *Conroy-Prugh*, the Supreme Court clearly did not intend to create a broad entitlement to allege de facto takings in the absence of extraordinary circumstances. "Our decision does not open the courts to the owners of all properties within an area designated for future condemnation. Rather, in order for a property owner to rely on this decision to support his petition for the appointment of viewers under Section 502(e) of the Eminent Domain Code, that owner must be able to allege *significant facts* to entitle him to relief." *Conroy-Prugh, supra,* 456 Pa. at 393, 321 A.2d at 602. (Emphasis added.) (Footnote omitted.) In *Conroy-Prugh* the significant facts included a loss of tenants resulting in insufficient income to cover expenses and an inevitable, *actual loss* of the property. This is not a case with such significant facts.[2] We have recently recognized that it is the threat of the actual loss of property at a tax sale and the lack of income which brings a case within the ambit of a de facto taking as prescribed by *Conroy-Prugh*. *Reingold v. Urban Redevelopment Authority of Pittsburgh,* 20 Pa. Commonwealth Ct. 266, 341 A.2d 915 (1975).[3]

The instant appeal is somewhat analogous to *Securda, supra,* where a plan had been filed and neighboring properties were condemned or acquired including other parcels owned by Securda. In that case, we reversed the court below, which had overruled the

---

[2] In *Commonwealth's Crosstown Expressway Appeal, supra,* we recognized that exceptional circumstances are necessary in de facto condemnation cases, although in that case we found that a taking *may* have in fact occurred if allegations of the petition were proven. In *Rawls, supra,* the exceptional facts were an actual *physical intrusion* of the condemnee's land by an obnoxious effluent produced as a result of the condemnor's activities on neighboring land.

[3] *Cf. Petition of Cornell Industrial Electric, Inc.,* 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). The property in that case was rendered useless and produced no income.

Commonwealth's preliminary objections. We think *Securda* is most applicable here and quote from its rationale as follows:

"After a careful review of the pleadings and the stipulated facts before us, we conclude that Securda's dilemma is not the extraordinary situation involved in Conroy-Prugh where Section 604 of the Eminent Domain Code would not afford a property owner an adequate remedy for the loss suffered by a decline in property values attendant to an imminent condemnation. Contrary to Securda's argument to this Court and apparently the conclusion of the court below, neither the pleadings nor facts stipulated allege or admit that the acquisitions or condemnations affected thus far interfere with access to Securda's remaining lots, or that it is otherwise unable to use its remaining property, within or without the recorded right-of-way. Nor is there an averment, unlike Conroy-Prugh Glass Co. v. Commonwealth, supra, and Commonwealth's Crosstown Expressway Appeal, supra, that the imminence of the condemnation threatens Securda with the actual loss of its property. Securda is still free to develop his remaining building lots as it wishes (although an admittedly unrealistic business gamble), and it will be compensated for any improvements made thereon when its property is formally condemned. Commonwealth Appeal, supra. Although it may well be that the recording of the right-of-way plan will have the effect of depreciating the sales value of Securda's remaining lots, adequate relief is provided by Section 604." *Securda, supra,* 16 Pa. Commonwealth Ct. at 47-48, 329 A.2d at 299-300.

In conclusion, appellees have not on this record been substantially deprived of the beneficial use and enjoyment of their property, so as to constitute a taking. However, appellees are not without protection for at such time as access to their property is actually

impaired Section 612 of the Code, 26 P.S. §1-612, provides a remedy. Further, if a declaration of taking is, in fact, filed, appellees may recover damages as to the highest and best use of the property unaffected by any diminution in value produced by the imminency of this project. *See* Sections 603 and 604 of the Code, 26 P.S. §§1-603, 1-604.

The order of the court below is reversed and appellees' petitions are dismissed.