In Re: Construction of The Commonwealth of Pennsylvania, Department of Transportation, of Legislative Route 115 etc. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued March 3, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Jeffrey L. Giltenboth,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Edward J. Tocci, Duplaga, Tocci, Palmieri & McMillen,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., February 7, 1984:

This is an appeal by the Commonwealth's Department of Transportation (Commonwealth) from an order entered by the Court of Common Pleas of Beaver County confirming a viewers' award of delay compensation in favor of Hazel M. Pettibon (Pettibon) under Section 611 of the Eminent Domain Code (Code).[1]

The controversy between Pettibon and the Commonwealth began over a decade ago when Pettibon, on December 9, 1972, filed a petition for appointment

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-611.

of a board of viewers. She alleged that a *de facto* taking had occurred when the Commonwealth, on October 4, 1968, filed a plan to change a highway abutting her property into a limited access highway. The Commonwealth filed preliminary objections to the petition. Pursuant to a negotiated disposition, the petition for viewers was dismissed and the plan declared null and void.

On August 9, 1973, the Commonwealth filed a new plan. More than two years later, in November of 1975, the Commonwealth filed a declaration of taking asserting, *inter alia,* that its purpose was "to establish the liability of the Commonwealth of Pennsylvania, Department of Transportation, for consequential damages to the properties abutting the said highway improvement, under the terms of Section 612 of the Eminent Domain Code."[2] In August of 1976, the Commonwealth paid Pettibon a *pro tanto* payment of $4,325.00.

After the declaration was filed, Pettibon filed a second petition for appointment of viewers, again asserting a *de facto* taking. In response to preliminary objections filed by the Commonwealth, the petition for viewers was dismissed as to the alleged *de facto* taking. However, a board of viewers was appointed to assess damages in connection with the declaration of taking filed by the Commonwealth.

In a report submitted on December 8, 1981, the board of viewers found that 244 feet of Pettibon's access to the existing highway was taken by the Commonwealth for the purpose of converting that highway to one of limited access. The board assessed general damages in the amount of $50,000.00. Furthermore, the board awarded delay damages on the

---

[2] 26 P.S. §1-612.

$50,000.00 from November 21, 1975—the date of the declaration of taking—until August 11, 1976—the date of the *pro tanto* payment. The board also determined that, as to the unpaid portion of the general award, delay damages would be computed from August 11, 1976.

In its objections to the viewers report, the Commonwealth contended that no compensable injury occurred inasmuch as Pettibon continued to have full enjoyment of her property, and because the fence which would have limited her highway access was never constructed.[3] Furthermore, the Commonwealth objected that Pettibon was not entitled to delay damages because she remained in full possession of the property. The court dismissed the objections, holding that Pettibon had suffered a compensable injury, as evidenced by the Commonwealth's filing of a declaration of taking and its payment of *pro tanto* damages. The court also held that Pettibon was entitled to delay damages from the date of the declaration of taking. Regarding the latter conclusion, the court relied on the portion of Section 611 of the Code which provides that, as to a condemnee who remains in possession of condemned property, delay damages are to be allowed from the date of the condemnation "if the condemnation is such that possession is not required to effectuate it." The case was then placed on the trial list. Since the court's dismissal of the Commonwealth's objections to the viewers' report constituted a final order,[4] the Commonwealth filed

---

[3] There is nothing in the record to indicate that the fence, even as proposed, would have occupied any part of Pettibon's property.

[4] Section 517 of the Code, 26 P.S. §1-517, states:

All objections, other than to the amount of the award, raised by the appeal shall be determined by the court

this appeal. The only issue raised by the Commonwealth is whether the lower court erred in holding that delay damages were allowable from the date of the declaration of taking.

The Commonwealth contends that Pettibon has no entitlement to delay damages because she has yet to suffer any compensable injury to her property interest. This contention is based on the fact that no property has been taken from her, that she remained in full possession of the property, and that the right-of-way fence which would limit her access to the highway was never erected. Pettibon, on the other hand, does not challenge the Commonwealth's assertion that she has suffered no physical interference with her enjoyment of the property. She contends, however, that the filing of the declaration of taking indicated the imminency of the highway project and, consequently, destroyed the commercial value of her property. She contends, furthermore, that the circumstances of the case establish her entitlement to delay damages under Section 611 despite the fact that she remained in possession of the property at all times.

This appeal is complicated by a labyrinthine, and sometimes baffling procedural history. That notwithstanding, we believe that the key to resolution of this case lies in a determination of whether a condemnation has occurred. Section 611 prescribes that when a condemnation is such that it does not require pos-

preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report *shall constitute a final order.* (Emphasis added.)

An order dismissing objections that a condemnee has not suffered a compensable loss is appealable. *Hession Condemnation Case,* 430 Pa. 273, 242 A.2d 432 (1968).

session by the condemnor for its effectuation, delay damages are calculated from the *date of condemnation*. As we understand the Commonwealth's argument, a condemnation has not occurred, and therefore, no delay damages are yet due. Pettibon, on the other hand, appears to fix the date of the declaration of taking as the date of condemnation. For the reasons which follow, we conclude that, in the circumstances of this case, a condemnation did not occur on the date of the declaration of taking, but will only occur if and when some permanent interference with Pettibon's highway access actually takes place.

Initially, we must note that, in determining whether or not a condemnation occurred, we place no reliance on the fact that the Commonwealth, in 1975, filed a declaration of taking. In *Department of Transportation v. Hess,* 55 Pa. Commonwealth Ct. 27, 423 A.2d 434 (1980), we held that the mere filing of a declaration of taking does not effect a condemnation for purposes of Section 611.

Nor do we consider ourselves bound by the fact that the Commonwealth paid Pettibon several thousand dollars in *pro tanto* damages. Why this payment was made is hardly illuminated by the record before us; however, whether or not it should have been paid is not for us to consider here. Our limited responsibility in this case is to look to the law and the record before us to determine when, if ever, any compensable injury occurred.

The Pennsylvania Supreme Court, in *Pane v. Department of Highways,* 422 Pa. 489, 222 A.2d 913 (1966), expressly held that if the Commonwealth files a plan which does not "take" property, but involves injuring the interests of an abutting property owner, then, under Section 612, "the date upon which

a condemnation shall be deemed effected should be the date when the work shall have begun, *i.e.*, when the 'injury' shall have actually occurred.'' Applying that holding to the facts of instant case, it is clear that there has been no compensable injury under Section 612 of the Code, inasmuch as the work which would interfere with Pettibon's access has not been commenced.

Pettibon, in urging affirmance of the lower court, relies heavily upon dictum which appears in *Elias v. Department of Transportation,* 25 Pa. Commonwealth Ct. 605, 362 A.2d 459 (1976). That case dealt with claims of inverse condemnation in connection with the very same highway project involved in the instant appeal. The property owners in *Elias* contended that the Commonwealth's unexecuted plan to limit their access to the highway interfered with their present use and enjoyment of their property in that it diminished the property's marketability. This court, per judge BOWMAN, held that the record was insufficient to support a claim of inverse condemnation. The opinion, however, goes on to state:

> [The property owners] are not without protection for at such time as access to their property is actually impaired Section 612 of the Code . . . provides a remedy. Further, if a declaration of taking is, in fact, filed, [they] may recover damages as to the highest and best use of the property unaffected by any diminution in value produced by the imminency of this project.

25 Pa. Commonwealth Ct. at 612-13, 362 A.2d at 463. Pettibon relies upon the second sentence of foregoing quotation to urge that she has already suffered a compensable injury by virtue of the existence of a

172

declaration of the Commonwealth's intent to limit her access to the highway. Whatever the substantive merit of this argument may be—and we venture no opinion on it—we believe it is now foreclosed by Pettibon's failure to appeal the lower court's order dismissing her petition for appointment of viewers on the basis of a *de facto* taking.

It is clear that the declaration of taking filed by the Commonwealth was limited to such damages as are allowable under Section 612. Furthermore, for the reasons clearly explained in *Pane,* Section 612 provides no cause of action for damages until such time as access is actually interfered with. Thus, any claim for damages for an injury alleged to have occurred prior to the time that Pettibon's access is actually limited would fall outside of the declaration filed by the Commonwealth, and would be in the nature of a claim of damages for a *de facto* condemnation. Indeed, such was the gist of Pettibon's petition for appointment of viewers. That petition, however, was dismissed on the ground that there was no *de facto* taking; and no appeal was taken from that order. Hence, the trial court's subsequent determination that Pettibon had suffered a compensable injury could not validly rest on a theory of a *de facto* taking.

For the reasons set forth in this opinion, we conclude that the trial court erred in overruling the Commonwealth's objections to the viewers' award of delay compensation; consequently, we must reverse the court's order.

ORDER

AND Now, this 7th day of February, 1984, the order of the Court of Common Pleas of Beaver County, dated May 27, 1982, at No. 2137 of 1975, is hereby reversed.