883 A.2d 494

**Richard SIENKIEWICZ, Jr., t/d/b/a Montage Mini-Mart, Inc., Appellee**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 2005.

Decided Sept. 28, 2005.

Andrew S. Gordon, William Jones Cressler, Harrisburg, John V. Rovinsky, Scranton, for Dept. of Transp., appellant.

Edwin Aksel Abrahamsen, Scranton, for Montage Mini–Mart, Inc., appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice SAYLOR.

This matter involves an asserted *de facto* condemnation arising from the reconfiguration of a highway interchange and associated roadways.

Appellee, Richard Sienkiewicz, Jr., trading and doing business as Montage Mini–Mart, Inc. ("Landowner"), is the owner of a commercial property located at 2801 Stafford Avenue in the Borough of Moosic, Lackawanna County, which he operated as a service station (with gasoline and diesel fuel offerings) and convenience store. The location of the business was selected to take advantage of the property's close proximity to Interstate Route 81—highway traffic had access to the property (and from the property back to the Interstate) via a diamond-shaped set of ramps known as the Davis Street Interchange. The back (or south-facing portion) of Appellant's property was visible from Davis Street, but no legal access was available from that side. Accordingly, vehicles exiting the highway traveled roughly west on Davis Street to a point just beyond Landowner's property marked by a signal-controlled intersection with Stafford Avenue; executed a right turn to the north; proceeded past the west side of the property on a short curve (the "Stafford Curve"); continued on Stafford Avenue as the roadway straightened in a easterly direction along the frontage of the property and parallel to Davis Street (the "Stafford Straightaway"); and entered Landowner's property from this (the north-facing) side. In this way, Davis Street, the Stafford Curve, and the Stafford Straightaway formed an open loop bounding three sides of Landowner's property. The real property underlying both of these portions of Stafford Avenue (the Stafford Curve and the Stafford Straightaway) was owned by Anthony J. Rinaldi and, apparently, was never publicly dedicated. The roadway, however, was open for public use for more than two decades and was maintained by the City of Scranton, the boundary of which is immediately adjacent to the Stafford Straightaway.[1]

By the early 2000's, Appellant, the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") had begun planning a reconfiguration of the Davis Street Interchange and associated roadways in light of heavy use and

---

1. The common pleas court in this case ruled that the Stafford Curve was a public road as established by prescription, see *Sienkiewicz v. PennDOT*, 62 Pa. D. & C. 4th 449, 467 (C.P. Lackawanna 2003), a conclusion which is not challenged in this appeal.

corresponding deterioration in traffic conditions. The plans called for splitting the ramp closest to Landowner's property (connecting Davis Street to the southbound lanes of Route 81), channeling eastbound traffic onto a new ramp which would curve across the highway and away from the property. Additionally, to extend the flow of westbound traffic, the re-design called for the Stafford Curve to be eliminated and replaced by a similar, new curve several hundred feet to the northwest, and for the Stafford Straightway to be extended to meet this new curve. The effect was to extend the closed end of the open loop formed by the roadways roughly 100 yards to the west, thus encompassing an adjacent property owned by Andrew G. Zubert, which was also operated as a commercial service station and convenience store. PennDOT also planned to eliminate the existing traffic signal at the intersection of Davis Street and the Stafford Curve; narrow the access to the Stafford Curve from 45 to 24 feet by installing curbing, effectively excluding commercial traffic; and vacate the Stafford Curve, thereby restoring it to Mr. Rinaldi's private use and control. Finally, the planners contemplated the installation of curbing along the Stafford Straightaway, with openings to accommodate the direct access to Landowner's property that were to be significantly narrower in width than the existing, wide-open access.[2]

In February of 2002, immediately prior to the reconfiguration described above, Landowner filed a petition for appointment of a board of viewers pursuant to Section 502(e) of the Eminent Domain Code,[3] 26 P.S. § 1–502(e), which provides for the appointment of a board of viewers where a petitioner has suffered a compensable injury at the instance of an entity clothed with the power of eminent domain, but no declaration

**2.** The original plans called for narrowing the existing wide-open access (or access via 91- and 62-foot-wide openings, taking into account a moveable planter separating the openings) to two 24 foot openings. The plans were later changed to provide for two 40 foot wide openings. *See* Deposition of Frederick C. Spott, November 27, 2002, at 63. However, as noted below, the curbing was never installed. *See infra* note 5 & accompanying text.

**3.** Act of June 27, 1964, Special Sess., P.L. 84 (as amended 26 P.S. §§ 1–101–1–903).

of taking has been filed. *See id.* In an amended petition, Landowner invoked Section 612 of the Eminent Domain Code, 26 P.S. § 1–612, authorizing an award of consequential damages relative to, *inter alia,* permanent interference with access, alleging that PennDOT's plans would foreclose access to the property by commercial traffic and, correspondingly, result in monetary loss and a compensable injury in the nature of a *de facto* condemnation.[4] PennDOT filed preliminary objections to Landowner's original and amended petitions, indicating, *inter alia,* that after construction of the subject property, reasonable access would be afforded to Landowner's property; Landowner had no vested interest in any particular traffic pattern relative to Route 81; and any impact to the subject property resulting from the essential reconfiguration of the Davis Street Interchange and associated roadways was non-compensable.

During the course of the ensuing litigation, PennDOT effectuated the reconfiguration of the roadways as described above, except that it did not install the curbing as planned along the Stafford Straightaway, and the direct access to Landowner's property, therefore, remained wide open.[5] The net effect of the alterations was to require Route 81 traffic to proceed approximately 100 yards past Landowner's property, by and around his closest competitor, and a similar distance in the opposite direction, in order to gain access. While the

---

4. Section 612 provides:

   All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference of access thereto, or injury to surface support, whether or not any property is taken.

   26 P.S. § 1–612.

5. The depositions reflect the status quo through late 2002. *See, e.g.,* Deposition of John J. Pocius, P.E., November 14, 2002, at 86–87. Furthermore, PennDOT maintained throughout the litigation that the curbing was never installed, *see, e.g.,* N.T., March 6, 2003, at 48, and, in connection with its efforts to gain reconsideration in the Commonwealth Court, submitted an affidavit from a district executive representing that the agency permanently abandoned the plans to install such curbing. *See* R.R. at 511–513a.

construction was in progress, Landowner closed his service station and convenience store, in light of diminished profits.

The record of the proceedings on PennDOT's preliminary objections was established via the taking of depositions, per the direction of the common pleas court.[6] Following argument, the common pleas court denied PennDOT's preliminary objections, declared that a *de facto* condemnation by Penn-DOT had occurred relative to Landowner's property, and directed the appointment of a board of viewers to determine just compensation. Initially, the common pleas court recognized that, in his effort to establish a *de facto* condemnation, Landowner bore a heavy burden to establish, by a fair preponderance of the credible testimony, that PennDOT had substantially deprived Landowner of the beneficial use and enjoyment of his property. *See Miller & Son Paving, Inc. v. Plumstead Twp.*, 552 Pa. 652, 656, 717 A.2d 483, 485 (1998); *Petition of Ramsey*, 31 Pa.Cmwlth. 182, 188, 375 A.2d 886, 889 (1977) (quoting *Lizza v. Uniontown City*, 345 Pa. 363, 365, 28 A.2d 916, 918 (1942)).

In applying this standard, the common pleas court treated Landowner's claim as entailing two distinct theories. The first was a claim of actionable harm based on the redirection of the flow of traffic to the new intersection of Davis Street and Stafford Avenue as a consequence of the closing the Stafford Curve. The second was predicated on PennDOT's plans to narrow the direct access to Landowner's property from the Stafford Straightaway.

In the first instance, the common pleas court held that the redirection of traffic flow by virtue of the closing of the Stafford Curve would not support a claim for compensation

6. Under the Eminent Domain Code, preliminary objections are the vehicle by which all factual and legal issues relative to the propriety of the appointment of viewers are assessed, and the statute expressly authorizes the use of depositions to create a record where necessary. *See* 26 P.S. § 1–504 (prescribing that, upon the filing of preliminary objections, "[t]he court shall determine promptly all preliminary objections and make such orders and decrees as justice shall require. If an issue of fact is raised, evidence may be taken by deposition or otherwise as the court shall direct."). No party has objected to the application of such procedure in the present case.

under the Eminent Domain Code. In this regard, the court recognized that, although every property owner has a right of reasonable access to his or her property from a public roadway, *see Commonwealth v. Hession*, 430 Pa. 273, 277, 242 A.2d 432, 434 (1968); *Wolf v. Commonwealth, Dep't of Highways*, 422 Pa. 34, 39, 220 A.2d 868, 871 (1966), there is no cognizable legal interest in preserving a particular traffic flow. *See Sienkiewicz*, 62 Pa. D. & C. 4th at 462, 469 (citing, *inter alia, Hession*, 430 Pa. at 281, 242 A.2d at 436 (observing that "no compensable right exists in any given traffic pattern; having no right to the continuation of the existing traffic pattern, [landowners] may not demand compensation for a change in that pattern")); *accord id.* at 278, 242 A.2d at 434 ("Our cases are legion that, where the result of a condemnor's action is to compel the allegedly affected property owner to travel a short distance farther to reach the system of streets going in a specific direction, this slight inconvenience is not compensable."). The common pleas court acknowledged Commonwealth Court authority to the effect that it is possible for a detour to be so long and circuitous as to represent an unreasonable, permanent interference with property. *See, e.g., Jackson Gear Co. v. PennDOT*, 657 A.2d 1370, 1371 (Pa.Cmwlth.1995). Upon examination of the relevant authorities,[7] however, the

7. The comparative aspect of the court's examination proceeded as follows:

> [D]ecisional precedent has established that circuitous detours of more than several miles may constitute compensable deprivation of reasonable access whereas less onerous routes generally have been regarded as non-compensable inconveniences. *Compare Jackson Gear Co. [v. PennDOT,* 657 A.2d 1370 (Pa.Cmwlth.1995)] (detour of between 6 and 11.5 miles required by erection of medial barriers represented permanent unreasonable interference with right of access); *Com., Department of Transportation v. Guyette*, 103 Pa.Cmwlth. 402, 405–406, 520 A.2d 548, 549–550 (1987) (requiring 18–wheel trucks to travel an additional 7.45 miles in order to enter a commercial property was held to be compensable under Code), *app. denied*, 516 Pa. 644, 533 A.2d 714 (1987) *and Appeal of Com., Department of Transportation*, 164 Pa.Cmwlth. 81, 87–88, 644 A.2d 1274, 1277 (1994) (1.3 mile detour required by barrier was not so circuitous as to be a substantial or unreasonable interference with access), *app. denied*, 540 Pa. 605, 655 A.2d 993 (1995); *Washington Boulevard v. Com., Department of Transportation*, 34 Pa.Cmwlth. 356, 360–61, 383 A.2d 1289, 1291 (1978) (circuitous travel covering 2.8 miles found

court concluded that the additional travel of less than 1,000 feet at issue here was substantially less burdensome than other situations that had been deemed reasonable by the courts, and therefore, the reconfiguration did not constitute an unreasonable interference with access. *See Sienkiewicz,* 62 Pa. D. & C. 4th at 470 ("Because a landowner does not have a 'property right in the traffic which flows by his door,' *Hession,* 430 Pa. at 282, 242 A.2d at 436, the diversion of traffic from Davis Street to [the Stafford Straightaway] by way of a somewhat circuitous route is not tantamount to a compensable *de facto* taking.").

It was with regard to the second theory, interference with direct access, that the common pleas court found relief warranted. In this respect, however, the court premised its analysis upon a factual finding that is not supported in the record to the effect that PennDOT had actually narrowed the access to Landowner's property along the Stafford Straightaway by installing curbing.[8] From this frame of reference, the common pleas court found relevant a series of decisions in which relief was deemed available based upon PennDOT's actual interference with direct means of ingress and egress

not to be so unreasonable as to constitute a taking under 26 P.S. § 1–612).
*Sienkiewicz,* 62 Pa. D. & C. 4th at 468–69.

8. The court's finding was as follows:
With regard to the easterly means of access to Sienkiewicz' property from the [Stafford Straightaway] ..., PennDOT has changed Sienkiewicz' ingress and egress from "wide open" uncurbed access comprised of 91 foot and 62 foot wide throats along [the Stafford Straightaway] to two 40 foot wide drop curb openings carved out of 8 inch high curbing.... According to the American Association of State Highway and Transportation Officials (AASHTO) standards governing Geometry for Highways and Streets, 40 foot wide drop curb openings are not reasonably safe means of access for 65 foot tractor trailers and comparably large buses, motor homes and trucks which would be forced to traverse 8 inch high curbing and possibly "blow a tire" in attempting to access Sienkiewicz' property via the easterly Stafford Avenue side of that land.
*Sienkiewicz,* 62 Pa. D. & C. 4th at 457–58 (citations omitted). As noted, exclusive of the reference to the AASHTO standards, this finding garners no affirmative support from the record; indeed, it contradicts record evidence, as well as PennDOT's consistent representations to the courts. *See supra* notes 2 & 5.

from private property. *See McCrady Case,* 399 Pa. 586, 160 A.2d 715 (1960); *Tracy v. PennDOT,* 43 Pa.Cmwlth. 218, 402 A.2d 286 (1979); *Finkelstein v. Commonwealth, Dep't of Transp.,* 23 Pa.Cmwlth. 628, 354 A.2d 14 (1976).[9] Applying these interference-with-direct-access decisions, the common pleas court held:

> The credible evidence contained in the record submitted for our review establishes that PennDOT's narrowing of Sienkiewicz' [Stafford Straightaway] accessways has effectively denied tractor trailers, buses and large trucks a reasonable and safe means of ingress to and egress from Sienkiewicz' property. As a consequence, Sienkiewicz has experienced a significant decline in gasoline and convenience items sales and has been forced to close his business. Based upon the sound appellate reasoning in *McCrady, Finkelstein* and *Tracy,* and in light of the purpose for which Sienkiewicz previously used his commercial property, PennDOT's actions in this regard constitute a *de facto* [condemnation] under Section 612 of the Eminent Domain Code. Accordingly, PennDOT's preliminary objections will be denied and the Board of Viewers will be directed to determine the amount of just compensation due under 26 P.S. § 1–612.

*Sienkiewicz,* 62 Pa. D. & C. 4th at 475.

On PennDOT's appeal, the Commonwealth Court affirmed in a published opinion. *See Sienkiewicz v. Commonwealth, Dep't of Transp.,* 842 A.2d 973 (Pa.Cmwlth.2004). Relative to Landowner's claim of injury from diversion of traffic, the court's reasoning and conclusion closely tracked that of the common pleas court—the harm to Landowner was found to be a non-compensable consequence of a legitimate exercise of PennDOT's police power. *See id.* at 978–79. As pertains to the interference-with-direct-access claim, however, the Commonwealth Court credited the common pleas court's finding that the curbing along the Stafford Straightaway restricted access by commercial traffic, *see id.* at 982, while at the same time recognizing that such curbing was never installed. *See*

---

**9.** *See also Elser v. PennDOT,* 651 A.2d 567 (Pa.Cmwlth.1994); *PennDOT v. Richards,* 124 Pa.Cmwlth. 432, 556 A.2d 510 (1989).

*id.* at 982 n. 7. In attempting to reconcile this inconsistency, the Commonwealth Court pointed to measures undertaken by PennDOT in redirecting the overall flow of traffic in the area, principally, those associated with privatization of the Stafford Curve, which the court had previously rejected as a basis for relief in connection with diversion-of-traffic claim. *See id.* at 982 ("although Landowner is not entitled to compensation for PennDOT's rerouting of traffic, it is entitled to compensation for PennDOT's permanent interference in the use and enjoyment of the subject property because the narrowing of [the Davis Street access to the Stafford Curve] and the installation of the eight-inch curbing [at that location] prevents large trucks and similar vehicles from having reasonable and safe access to the subject property"). The court indicated, in any event, that PennDOT's actual installation of the curbing was irrelevant, as follows:

> [S]imply because PennDOT's non-compensable actions contributed to the demise of Landowner's business prior to the completion of the planned installation of curbs, this does not somehow insulate PennDOT from its responsibility to compensate for its interference with access to the subject property once the installation is completed. We note that PennDOT has not taken the position that it is not going to install the curbing. Rather, the curbing simply has not been installed yet and Landowner's business has already ceased operations. Under the circumstances, the denial of preliminary objections and the appointment of a board of viewers is appropriate.

*Sienkiewicz,* 842 A.2d at 982 n. 7.

Our allowance of this appeal followed. The appellate review is directed to considering whether the common pleas court's findings are supported by substantial, record evidence, and whether the court abused its discretion or committed an error of law. *See Denes v. Pennsylvania Turnpike Comm'n,* 547 Pa. 152, 156, 689 A.2d 219, 222 (1997).

Presently, PennDOT vigorously attacks the Commonwealth Court's refusal to attach significance to the fact that the curbing was never installed on the Stafford Straightaway, and

therefore, Landowner's (and his patrons') direct access to Landowner's property was never impeded. On this point, PennDOT invokes a line of decisions establishing that a cause of action for consequential damages in the eminent domain context does not arise until the public improvement causing the asserted harm is actually constructed. *See, e.g., Pane v. Department of Highways,* 422 Pa. 489, 497–500, 222 A.2d 913, 917–18 (1966) (holding that a cause of action relative to an asserted *de facto* condemnation did not arise until physical restrictions to access were effected, since, until such time, the claim was speculative and remote, as no compensable injury had occurred; thus, the mere filing of a highway plan showing a change of grade that would interfere with access did not give rise to a condemnation claim); *In re Construction of Legislative Route 115,* 80 Pa.Cmwlth. 165, 170–72, 471 A.2d 1267, 1269–70 (1984) (relying on *Pane* to find no cause of action even after PennDOT filed a declaration of taking for a planned placement of fencing, where the fence had not actually been constructed). According to PennDOT, these decisions should have been deemed dispositive of Landowner's claim for damages based upon denial of access, but instead, they have been ignored by Landowner and the courts. In addition, PennDOT denominates as mere bootstrapping the Commonwealth Court's consideration of measures that did not affect direct access (principally, the closure of the Stafford Curve) in its assessment of the interference-with-direct-access claim. It is PennDOT's position that such measures clearly represent noncompensable alterations to traffic flow residing squarely within its exercise of its essential police powers in the public interest. *See generally Wolf,* 422 Pa. at 40, 220 A.2d at 871 ("[I]n the regulation of traffic and in the interest of public safety, the Commonwealth, acting within the scope of its police powers, may make reasonable rules and regulations which may dilute or diminish the rights of abutting property owners without liability to respond in damages. The theory is that, in such field, the interest of the abutting property owner must be subordinated to the interest of the public at large."); *id* at 47, 220 A.2d at 875 (describing the harm in such cases as " 'damnum absque injuria', or damage without legal injury" (quoting

*Missouri ex rel. State Highway Comm'n v. Meier,* 388 S.W.2d 855, 857 (Mo.1965))).[10]

For his part, Landowner, while not directly contradicting PennDOT's consistent assertion that the curbing was never installed along the Stafford Straightaway, maintains in general terms that all of the common pleas court's findings are supported in the evidence. Landowner's primary substantive rejoinder to PennDOT's contentions is as follows:

A review if the trial Court's Memorandum and Order of May 2, 2003, as well as the record, clearly shows that the trial court neither abused its discretion nor committed an error of law. The trial court relied on all evidence of record in making its finding that [PennDOT] changed [Landowner's] means of ingress and egress. Therefore, the trial court specifically noted that [Landowner's] decrease in gasoline and convenience items sales and revenues are largely attributed to the fact that tractor-trailers, motor homes, tour buses and large trucks can no longer access this property by way of Stafford Avenue. It is important to note that the Trial Court found that it was not just the curbing that caused [Landowner's] business to close, but also it was the narrowing of [the Stafford Curve] during the construction project that also caused [Landowner's] business to close. Further, the determination as to whether access to one's property is reasonable is a question of fact for the trial court.

Brief for Appellee at 9–10. Landowner does not address the *Pane* decision, which is at the center of PennDOT's argument. He does, however, advance the argument that the common pleas court and the Commonwealth Court should have credited his position that PennDOT's overall redirection of traffic

10. PennDOT also asserts that both the Commonwealth Court and the common pleas court erred in failing to recognize that sales for diesel fuel used by tractor trailers and other large vehicles did not decrease as a result of the highway improvements, and thus, interference with accessibility for these types of vehicles could not have given rise to a compensable injury. Given our disposition, below, however, we need not address this claim.

flow as a result of the reconfiguration of the Davis Interchange served as an alternative basis for compensation.

On review of the parties' respective arguments, the opinions of the Commonwealth Court and the common pleas court, and the record, we are in essential agreement with PennDOT's position.  We recognize that the right of access is a constitutionally protected property interest, incidental to ownership or occupancy of the land, and may be denied only under compelling circumstances.  *See Hardee's Food Systems, Inc. v. PennDOT*, 495 Pa. 514, 517–18, 434 A.2d 1209, 1211 (1981).  However, the absence of any record evidence that curbing was ever installed along the Stafford Straightaway frontage of Landowner's property wholly undercuts the common pleas court's central factual finding relative to the interference-with-direct-access claim.  Furthermore, as PennDOT argues, *Pane* and *Legislative Route 115* establish that the agency's unconsummated plans to narrow the direct access to the property are insufficient to support a cause of action relative to an asserted *de facto* condemnation, in the absence of some actual interference with direct access.  *See Pane,* 422 Pa. at 497–500, 222 A.2d at 917–18; *Legislative Route 115,* 80 Pa.Cmwlth. at 170–72, 471 A.2d at 1269–70.

PennDOT is also correct that the vacation of the Stafford Curve cannot properly be considered a restriction on direct access.  Again, the evidence (as well as the common pleas court's findings) establishes that direct access to Landowner's property was always from the Stafford Straightaway; factually, there was never any direct access from the Stafford Curve.  Rather, this portion of the roadway, like Davis Street and the Route 81 ramps, was merely part of an adjacent road system providing a convenient flow of traffic in the direction of Landowner's property.  As both a logical and a legal matter, then, the closure of the Stafford Curve was relevant only to Landowner's diversion-of-traffic claim, as to which the analysis and conclusions of both the Commonwealth Court and the common pleas court are well-reasoned and correct.  *See supra*

at 275–78, & n. 7, 883 A.2d at 498–99, & n. 7.[11] In this regard, the Commonwealth's interest in advancing the safety and convenience of the public prevails over Landowner's desire (albeit well founded) to maintain a preferred configuration of public roadways. *Accord Hession,* 430 Pa. at 277, 242 A.2d at 434; *Wolf,* 422 Pa. at 39, 220 A.2d at 871.

The order of the Commonwealth Court is reversed, and the matter is remanded with directions that PennDOT's preliminary objections are to be sustained.

Jurisdiction is relinquished.

**11.** The Commonwealth Court has previously recognized the relatively straightforward distinction between diversion-of-traffic cases and those involving actual restrictions on direct access. *See, e.g., Appeal of PennDOT,* 164 Pa.Cmwlth. 81, 87–88, 644 A.2d 1274, 1277 (1994); *Tracy,* 43 Pa.Cmwlth. at 221–22, 402 A.2d at 287–88.

To the extent that Appellee's present argument subsumes a claim of impact based upon diversion of traffic flow during the period of actual construction, the law is that such impact is also non-compensable, absent extraordinary circumstances not present here. *See Truck Terminal Realty Co. v. PennDOT,* 486 Pa. 16, 23, 403 A.2d 986, 989 (1979) ("Temporary interference with road access falls under the noncompensable, exercise of the police power necessary to effectuate public improvement, unless the alleged interference was accomplished in an arbitrary or unreasonable manner.").