# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HPT TA Properties Trust,       :
              Appellant    :
                           :
        v.              :   No. 410 C.D. 2019
                           :   ARGUED:  December 12, 2019
Township of West Hanover    :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**           **FILED:  April 27, 2020**


HPT TA Properties Trust (HPT) appeals from an order of the Court of Common Pleas of Dauphin County that granted the motion for judgment notwithstanding the verdict (JNOV) filed by the Township of West Hanover following a jury trial.  The jury returned a $1,750,000 verdict in favor of HPT for the alleged diminution in property value due to the closure of an elbow-shaped road (Elbow) providing a second access point to HPT's property.  We affirm.

The relevant background is as follows.  HPT operates a truck stop on its fifty-three-acre property located adjacent to Linglestown Road in the Township.  Originally, the property consisted of two parcels with different owners.  (Oct. 28, 2018, Stip., Ex. P-20; Reproduced Record "R.R." at 43a.)  One of the parcels was landlocked and the other had access to Linglestown Road.  In a 1966 Deed of

Easement between the Commonwealth of Pennsylvania, Department of Highways,[1] and the former owners of the parcel with access (Grantors), the Commonwealth created the Elbow as a public service road to provide the landlocked parcel with access to Linglestown Road. (Trial Court's March 26, 2019, Op. at 2 n.1.) Subsequently, HPT became the owner of both parcels. (Stip., Ex. P-20; R.R. at 44a.) With Linglestown Road providing sole vehicular access, cars and tractor-trailers used proximate but separate access points to enter and exit the property. Car traffic used the Elbow and tractor-trailer traffic used a separate access point added in the 1980s. (Trial Court's Op. at 2.)

In September 2008, the Township filed a Declaration of Taking (Declaration) for a portion of the property to widen Linglestown Road and to make related improvements in the area of Interstate 81 and exit 77 in conjunction with the Commonwealth. The Township attached a plan of the taking to the Declaration. (Sept. 15, 2008, Declaration; R.R. at 25-27a.) In February 2009, the Township paid $15,385.55 as estimated just compensation. (Stip., Ex. P-20; R.R. at 43a.)

Two years later, in November 2010, the Elbow was closed thereby limiting access to one lighted intersection for all traffic entering and exiting the property from Linglestown Road.[2] (Trial Court's Op. at 2.) In December 2013, HPT petitioned for an appointment of a Board of Viewers to determine just compensation pursuant to Section 502(b) of the Eminent Domain Code (Code), 26 Pa.C.S. § 502(b). HPT acknowledged that it did not file preliminary objections to the Declaration and that the parties were unable to reach an agreement on the amount of just compensation. (Dec. 4, 2013, Petition; Suppl. R.R. "S.R.R." at 407b.)

---

[1] The Department of Highways was the predecessor to the Department of Transportation.

[2] The district manager for the truck stop, Steven Swartz, testified as to the closure date. (November 13, 2018, Hearing, Notes of Testimony "N.T." at 43; R.R. at 162a.)

Following the appointment, the Board held a January 2015 hearing at which both parties submitted testimony and expert reports. HPT included in its damage calculations loss resulting from the closure of the Elbow. In February 2015, the Board filed a report finding that HPT sustained $1,250,000 in damages due to the taking.

In March 2015, the Township appealed to the trial court and requested a trial *de novo*.[3] The Township challenged both the Board's valuation and whether HPT had a compensable interest in the Elbow. Specifically, the Township alleged that the Board erred in compensating HPT for alleged easement rights over a car access point (1) that the Township did not take in the Declaration; (2) that HPT did not specifically allege in the Petition; (3) that HPT never pursued in preliminary objections; and (4) that HPT did not own. (Township's March 2, 2015, Notice of Appeal; S.R.R. at 421b.) Additionally, the Township alleged that any minor changes to an intersection requiring a property owner to travel a short distance were not compensable. (*Id*. at 422b.)

In November 2018, the trial court presided over a four-day jury trial. HPT attempted to establish that it sustained compensable damages of $1,750,000

[3] Discovery and pre-trial motions ensued. Pursuant to a bifurcated case management order, the trial court permitted the parties to complete discovery related to dispositive motions (not to include valuation) and set filing deadlines for motions and briefs. (March 26, 2015, Trial Court Order; S.R.R. at 427b.) The Township filed a motion for partial summary judgment and/or a motion in limine to preclude valuation evidence regarding the Elbow. The trial court denied the Township's motions, concluding that there were questions of material fact as to whether HPT had the right to use the Elbow pursuant to an easement. (Trial Court's March 15, 2016, Order; S.R.R. at 471b.) [Initially, HPT maintained that it had "an express, implied or prescriptive easement to use the Elbow to access the Property and that a quiet title action brought by a buyer or seller of the Property would have easily been successful to confirm HPT's right to use the Elbow." (HPT's Oct. 28, 2015, Brief in Opposition to the Township's Motions; R.R. at 439.)] Discovery relating to valuation and additional motions followed. Subsequently, the trial court reiterated that there was a factual issue as to whether HPT could receive compensation for closure of the Elbow.

due to the closure of the Elbow. Specifically, it sought to prove that the closure resulted in cars and tractor-trailers entering and exiting the property via one access point thereby creating unsafe conflict zones on the property between the two types of vehicles. The Township maintained that the lighted intersection improved the property and that HPT had no compensable interest in the Elbow as a matter of law. Ultimately, the jury rendered a $1,750,000 verdict in favor of HPT.

In the ensuing motion for JNOV, the Township argued that, absent a compensable interest in the Elbow, the jury should not have awarded HPT compensation for the alleged diminution in value due to the Elbow's closure. The trial court granted the motion, set aside the jury's verdict in favor of HPT, and directed judgment in favor of the Township as a matter of law. In support, the trial court observed: "Although it is undisputed that the Township took 0.054 acres . . . , [HPT] did not present any evidence to support an argument that the value of the [p]roperty decreased as a result of the loss of this land. Rather, [HPT's] expert solely relied on the closure of the Elbow to find a decrease in the [p]roperty's value." (Trial Court's Op. at 5 n.2.) However, "the expert testimony show[ed] that the Elbow was owned by the Commonwealth and could have been closed by the Commonwealth at any time without paying any compensation to [HPT]." (*Id.* at 4.) Additionally, the trial court concluded that "prevailing case law holds that a property owner does not have a cognizable legal interest in preserving a particular traffic flow[.]" (*Id.* at 4-5.)[4] HPT's appeal to this Court followed.

_____

[4] A JNOV is appropriate where a movant is entitled to judgment as a matter of law, and where the evidence is such that no two reasonable minds could disagree that the verdict should have been rendered in favor of the movant. *Rohm and Hass Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1176 (Pa. 2001). In each instance, the evidence must be considered in the light most favorable to the verdict winner, the verdict winner must be given every reasonable inference of fact arising from the evidence, and any conflicts in the evidence must be resolved in favor of the verdict winner.

4

On appeal, HPT poses the issue of whether it is entitled to any decrease in value to its property caused by the condemnation's closure of a critical driveway. In support of its position that the trial court erred in granting the motion for JNOV, HPT maintains that the trial court improperly determined that the taking did not include areas within the Elbow. Additionally, HPT argues that regardless of what land was subject to the actual taking, the taking had a significant impact on the property's value beyond the physical taking and, accordingly, HPT had compensable damages due to deprivation of reasonable access.

As an initial matter, HPT's traffic engineer, David Shropshire, testified that he reviewed the recorded documents/drawings referenced in the Declaration in ascertaining the extent of the taking. (Plans, Township's Ex. T-2; S.R.R. at 474b.) He acknowledged that the drawings reflected that the Commonwealth owned parcel eighteen, the Elbow. (Nov. 13, 2018, Hearing, Notes of Testimony "N.T." at 90-92; R.R. at 209-11a.) Additionally, he admitted that the Elbow was designated: "NO TAKE." (*Id.* at 91; R.R. at 210a.)

The 1966 Deed of Easement provides that the Commonwealth initially filed a plan with the Dauphin County Recorder of Deeds indicating an authorization to condemn an easement for highway purposes from Grantors' property. However, the parties subsequently "agreed that in lieu of condemnation, the GRANTOR[S] will convey to the COMMONWEALTH an *easement for highway purposes* from the aforesaid property" for $1.00 "and other good and valuable consideration[.]" (Sept. 1, 1966, Deed of Easement, Township's Ex. T-4; S.R.R. at 429b) (emphasis

---

*Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992). A JNOV must only be entered in a clear case that is free from doubt. *Id.* Appellate review of the evidence may not be based on how the court would have voted if it had been the jury, but "on the facts as they come through the sieve of the jury's deliberations." *Brown v. Shirks Motor Express*, 143 A.2d 374 (Pa. 1958).

5

added). Specifically, Grantors granted and conveyed approximately 1.02 acres to the Commonwealth "the easement required for highway purposes, unlimited in vertical dimension, as shown on the plot plan attached hereto and made a part hereof, said easement to be taken from the premises more fully described in [Grantors'] deed[.]" (*Id.*) In addition, with respect to liability and damages, the Deed of Easement provided that Grantors

> release[d], quitclaim[ed] and forever discharge[d] the COMMONWEALTH . . . from all suits, damages, claims and demands whatsoever, in law or equity or otherwise, against it . . . for or on account of any injury to or destruction of the lands of the GRANTOR[S] through or by reason of the . . . deprivation of the right of access, egress and ingress to and from said section of highway [the Elbow] . . . .

(*Id.*)

The legal effect of a deed of easement for highway purposes is that the Commonwealth has "the right to the actual and exclusive possession of the property at all times and for all purposes, . . . includ[ing] the right to build on the land, fence it in, and exclude other uses." *In re Marivitz*, 636 A.2d 1241, 1243 (Pa. Cmwlth. 1994). *See also In re Condemnation by Dep't of Transp. (Bernstein Appeal)*, 535 A.2d 1210, 1214 (Pa. Cmwlth. 1988) (notwithstanding the fact that a portion of property was subject to a *de jure* taking, landowners lacked a compensable property interest in land that was previously taken in a deed of easement for highway purposes). Notably, a deed of easement is more than a mere easement or right of way. *Marivitz*, 636 A.2d at 1243. "It is comparable to a fee in the surface and so much beneath as may be necessary for support. This estate, taken from an owner

6

under the right of eminent domain, has no further practical value to the owner in view of the rights of the state in it, unless the easement is formally abandoned."[5] *Id.*

Even viewing the evidence in the light most favorable to HPT, it shows that the Commonwealth owned the Elbow.[6] Additionally, HPT's argument that it was entitled to compensation for closure of the Elbow runs contrary to the language of the Deed of Easement and the nature of deeds of easement. The Deed of Easement was filed in the Dauphin County Recorder of Deeds Office and the document's unambiguous language recites that Grantors conveyed the Elbow to the Commonwealth. (S.R.R. at 429b.) HPT cannot assert the rights of a condemnee in the absence of a compensable interest as a property owner. *In re Condemnation by Dep't of Transp., of Two (2) Billboards Located on T.R. 209 etc.*, 452 A.2d 81, 83 (Pa. Cmwlth. 1982).

Furthermore, the recorded Deed of Easement contains an explicit waiver to the effect that Grantors forever agreed not to seek damages from the Commonwealth due to closing the Elbow. Specifically, Grantors released and discharged the Commonwealth from damages pertaining to "deprivation of the right of access, egress and ingress to and from said section of highway [the Elbow]." (S.R.R. at 429b.) This explicit and recorded waiver is binding on the subsequent purchaser. *See Palm Corp. v. Dep't of Transp.*, 688 A.2d 251, 254 (Pa. Cmwlth.

[5] Here, clearly, there was no abandonment. The access provided by the Elbow lasted for decades, and was continuously used pursuant to the Deed of Easement for highway purposes until two years after the Township's taking.

[6] The parties stipulated that HPT "owned a fee simple interest in the Elbow property area subject to the Deed of Easement [at the time of the taking]." (Stip., Ex. P-20; R.R. at 44a.) Additionally, the trial court noted the parties' agreement that HPT "still owns the underlying land where a portion of the Elbow was located." (Trial Court's Op. at 2.) However, the evidence must support any stipulation or determination. Notably, the stipulation's careful language characterized the location of the ownership interest as "the Elbow property area."

7

1997) (purchaser with notice of an existing easement takes land subject to that easement).

Consequently, the trial court did not err in concluding that HPT had no compensable interest in the closing of the Elbow and accordingly, we affirm.[7]

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[7] In light of our disposition as to the legal effect of the Deed of Easement, we need not reach any issues pertaining to alleged unreasonable access due to the closure of the Elbow. In any event, HPT failed to plead an issue as to the reasonableness of its access after the taking or to file an action under another provision of the Eminent Domain Code. (*See* Section 714, 26 Pa. C.S. § 714 "consequential damages" or Section 715, 26 Pa. C.S. § 715 "vacation of public road"). Of course, these actions may have been problematic given the legal effect of the Deed of Easement.

Regardless, HPT's argument that closure of the Elbow resulted in a compensable deprivation of reasonable access lacks merit. This is a case of a non-compensable change in traffic flow. *See Sienkiewicz v. Dep't of Transp.*, 883 A.2d 494, 498 (Pa. 2005) (notwithstanding the fact that every property owner has a right to reasonable access to his property from a public roadway, there is no cognizable legal interest in preservation of a particular traffic flow), and *Dep't of Transp. v. Elser (Elser I)*, 620 A.2d 67 (Pa. Cmwlth. 1993) (no just compensation warranted for "denial of unfettered access to the public way."). Notably, the improvement project resulted in the closure of one access point but not all access to Linglestown Road. Additionally, the evidence did not reflect that the improved intersection constituted unreasonable access. (Trial Court's Op. at 8.) Instead, the evidence indicated that the conflict zones with intersecting cars and tractor-trailers were limited to the property and that the Township did not control any areas within those zones. (Nov. 13, 2018, Hearing, N.T. at 102-03; R.R. at 221-22a.)

Moreover, the Township improved the remaining access point by constructing a lighted intersection. Even HPT's experts (traffic engineer and truck stop consultant) conceded that the improved intersection provided some benefit and/or contributed to public safety. (N.T. at 116 and 142-43; R.R. at 235a and 261-62a.) The fact that the lighted intersection made it easier for traffic to access a competing truck stop across the street (N.T. at 143-44; R.R. at 262-63a) did not cause otherwise reasonable access to become unreasonable.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HPT TA Properties Trust,        :
                    Appellant     :
                                 :
            v.                   :    No. 410 C.D. 2019
                                 :
Township of West Hanover     :

# **O R D E R**

AND NOW, this 27th day of April, 2020, the order of the Court of Common Pleas of Dauphin County is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge